IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 3, 2009

## GEORGE SCOTT MASON v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Bedford County**
**No. 11343    Robert Crigler, Judge**

---

**No. M2008-00911-CCA-R3-PC - Filed August 11, 2009**

---

The petitioner, George Scott Mason, appeals the judgment of the Bedford County Circuit Court denying post-conviction relief. In this appeal, the petitioner argues that he received the ineffective assistance of counsel which caused him to enter an unknowing and involuntary guilty plea. After review, the judgment of the court denying post-conviction relief is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. McLin, J., delivered the opinion of the court, in which John Everett Williams and Camille R. McMullen, JJ., joined.

Andrew Jackson Dearing, III, Assistant Public Defender, Shelbyville, Tennessee, for the appellant, George Scott Mason.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Charles Frank Crawford, Jr., District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The record reflects that the petitioner was charged with two counts of sale or delivery of .5 grams or more of cocaine, a Schedule II controlled substance, one count of evading arrest, and one count of reckless endangerment. Pursuant to a negotiated plea agreement, the petitioner pled guilty to selling over .5 grams of cocaine and was sentenced to ten years imprisonment as a Range I offender. The remaining charges were dismissed. Prior to entering the plea, the petitioner signed a form entitled, "Petition to Enter Plea of Guilty." The form extensively detailed the petitioner's rights and listed the charged offenses and the potential penalty ranges. The form specifically noted that the petitioner's ten year sentence could be run "consecutive to any other sentence including Bedford 13650." At the plea submission hearing, the state offered a statement of fact which indicated that the petitioner was pleading guilty because he sold crack cocaine to a confidential informant for $225. The petitioner acknowledged that the statement of fact offered by the state was accurate and that he was guilty of the offense.

At the plea submission hearing, the trial court informed the petitioner of the constitutional rights he was waiving by pleading guilty and the range of punishment for the offense to which he was pleading guilty. The petitioner stated that he had read the plea agreement and understood its contents. He stated that he was voluntarily pleading guilty to selling over .5 grams of a Schedule II controlled substance in exchange for a sentence of 10 years at 30% and the dismissal of the remaining three counts of the indictment. The petitioner maintained that his guilty plea was entered voluntarily. The petitioner indicated that he was satisfied with his attorneys' representation and that they had done everything they could to find witnesses, file motions, and represent him in the case. The petitioner indicated that he was in good health, had obtained his GED, and was able to read and write. The trial court found that the petitioner was knowingly and voluntarily pleading guilty and accepted the petitioner's plea.

On August 13, 2007, the petitioner filed a pro se petition for post-conviction relief. Thereafter, counsel was appointed and an evidentiary hearing was held. At the hearing, the petitioner testified that Libby Snyder was appointed to represent him, but John H. Norton, III, began representation of the case prior to the entry of his guilty plea. The petitioner acknowledged that he received discovery materials from his attorneys, which included copies of his indictments, a transcript of the preliminary hearing, and the state's witness list. He recalled that he discussed the discovery with Attorney Snyder, but he claimed that they did not discuss the witness list or his prior criminal record. The petitioner asserted that he discovered the identity of the confidential informant. The petitioner further asserted that the confidential informant was Andrew Rankins. The petitioner claimed that Rankins had written a letter to his nephew, indicating that the petitioner had not sold him the drugs on the day of the offense. The petitioner also claimed that the defense investigator, Larry Shavers, talked to Rankins and was told the same thing. The petitioner recounted that he prepared a motion requesting that the state release the identity of the confidential informant. He did so because he wanted verification that Rankins was the confidential informant. However, Attorney Snyder did not file the motion and informed the petitioner that she had spoken to the state prosecutor regarding the release of the confidential informant's identity. She further informed the petitioner that the prosecutor would stop all plea negotiations if she filed the petitioner's motion. The petitioner maintained that even though he already knew the identity of the confidential informant he was willing to cease plea negotiations with the state in order to obtain the name of the confidential informant via motion because he believed that the informant was not credible.

The petitioner acknowledged that Attorney Snyder discussed the laboratory report of the drugs he had allegedly sold to the confidential informant. However, the petitioner complained that Attorney Snyder "never did go into deep details." The petitioner said the laboratory report indicated the cocaine weighed 3.8 grams. However, one of the police officers involved in monitoring the drug transaction testified at the preliminary hearing that the petitioner sold 7 grams of cocaine. According to the petitioner, Attorney Snyder responded to his concern by telling him that she would attack the officer's credibility at trial with any inconsistency from his prior testimony. The petitioner stated that he asked Attorney Snyder to investigate the chain of custody for the drugs. She told him that

she would do more research on the issue and would file a motion if appropriate. The petitioner complained that no motion was filed challenging chain of custody.

The petitioner testified that his attorneys sent him a compact disc and an audio cassette of the drug transaction but he was not allowed to listen to them in prison. He recalled that Attorney Snyder informed him that the tape was mostly inaudible. The petitioner acknowledged that Attorney Snyder had the tape transcribed for him. The petitioner also acknowledged that he was eventually able to listen to the tape with Attorney Snyder at the county jail. The petitioner claimed that his voice was not on the tape. The petitioner admitted that his attorneys filed a motion to suppress the tape of the drug transaction, but the court did not rule on it. The petitioner admitted that the trial court redacted non-relevant and prejudicial portions of the tape. The petitioner conceded that his attorneys might have worked something out with the prosecutor with regard to the admission of the tape.

The petitioner acknowledged that his attorneys filed several motions on his behalf, including one seeking to exclude from evidence the currency used to purchase the drugs. He recalled that the motion was argued in court, but he complained that his attorneys did not present proof and the court did not issue a ruling on the motion. The petitioner asserted that he asked Attorney Snyder to file a motion to suppress the evidence discovered as a result of the stop of his vehicle following the drug transaction. However, Attorney Snyder would not discuss the issue with him. The petitioner said he was not responsible for evading arrest and reckless endangerment even though law enforcement involved in the stop of his vehicle alleged that he was involved in a vehicle chase, ran a stop sign, and nearly hit another police vehicle. The petitioner maintained that his attorneys should have filed the motion to suppress because his constitutional rights were violated.

The petitioner testified that he requested Attorney Snyder speak with the members of the Drug Task Force involved with his case, but he did not know if this was done. He conceded, however, that state witnesses were not obligated to talk to the defense. The petitioner said that he asked Attorney Snyder to talk to Misty York regarding a potential alibi defense. Thereafter, Attorney Snyder sent the petitioner a letter indicating that she had contacted York's grandmother, but York was out of town and could not be located. The petitioner complained that Attorney Snyder did not do enough to investigate his alibi defense.

The petitioner asserted that prior to entering a guilty plea, he met with his attorneys and discussed the possibility of federal charges being filed against him. The petitioner asserted that during this conversation, Attorney Norton told him that if did not plead guilty, Tim Lane of the 17th Judicial District Drug Task Force would talk to the United States Attorney's Office and request that the petitioner be prosecuted on federal charges, which carried a potential life sentence. According to the petitioner, he asked for a document from the federal government stating that they would not prosecute him if he pled guilty. Subsequently, his attorneys gave him a letter from Tim Lane reciting the fact that Lane had brought the petitioner's case to the attention of the United States Attorney's Office for possible prosecution on federal charges. However, because the petitioner had agreed to enter a guilty plea, Lane would make no further attempt to involve the federal government in the

prosecution of the petitioner. The letter was entered into evidence as exhibit 7. The petitioner said he was concerned that he would be prosecuted by the federal government and receive a life sentence if he did not plead guilty. The petitioner asserted that he learned after the plea that the federal government was not bound by the letter written by Tim Lane. He claimed he would not have pled guilty had he known of this fact prior to entering his plea. He acknowledged that the federal government had not pursued charges against him.

The petitioner claimed that he wanted to show the letter to the trial court as proof he was being coerced into taking the 10-year plea deal. However, he did not bring the letter to the hearing and pled guilty because his attorneys told him it was in his best interest. The petitioner admitted that he could have discussed the contents of the letter with the court at the hearing but did not do so. The petitioner complained that he was not aware that he could have refused to plead guilty in Moore County and moved the hearing to Bedford County. However, he acknowledged that the trial court asked him at the hearing if he had a problem with having the hearing in Moore County and he responded that he had no objection. The petitioner asserted that he said "yes" to the trial court's questions so his plea would be accepted. The petitioner acknowledged that he confirmed the state's statement of facts as true. He also admitted that he had told the trial court that he had no complaints with his attorneys' representation. He further acknowledged that he received the benefit of Range I sentencing even though he qualified for Range II sentencing. The petitioner noted that he had filed two complaints with the Board of Professional Responsibility regarding his attorneys' representation of his case.

Libby Snyder testified that she had been licensed to practice law in Tennessee since 2003 and that the majority of her practice was criminal defense. She stated that Attorney Norton was the senior partner in her firm. He had practiced law for about 30 years with the majority of his practice in criminal defense. On February 22, 2007, she was appointed to represent the petitioner. After her appointment, Attorney Snyder requested discovery from the state, had the preliminary hearing transcribed for the petitioner's review, requested the petitioner's case file from his former attorney, and spoke to Tim Lane and the petitioner about the charges set forth in the indictment. She recounted that the case involved a controlled drug buy in the Food Lion parking lot after which police officers pursued and arrested the petitioner. Once arrested, the officers retrieved the currency used by the confidential informant to purchase drugs from the petitioner.

Attorney Snyder testified that she discussed the case with the petitioner and explained to him why she did not file certain motions he wanted filed because they lacked merit. Attorney Snyder said that the petitioner was familiar with the court system and understood her explanations. Attorney Snyder recounted that one of the motions the petitioner wanted filed was a motion to suppress the stop of his vehicle based on his belief that the confidential informant was not credible. Attorney Snyder said that there was no basis for filing this motion. She also did not file a motion to dismiss the indictments because they were not defective. According to Attorney Snyder, the state's witness list comprised mostly of law enforcement. She explained to the petitioner that the state's witnesses were not obligated to talk to her. Nonetheless, she and Attorney Norton talked to Tim Lane from the Drug Task Force about the facts of the petitioner's case.

-4-

Attorney Snyder testified that she did not formally request the name of the confidential informant from the District Attorney's Office. She explained that she had learned from the petitioner that Andrew Rankins was the confidential informant. She had Investigator Larry Shavers speak to Rankins. Investigator Shavers was able to obtain a statement from Rankins, confirming that he was the confidential informant and indicating that he could not identify the petitioner as the person who sold him drugs. Attorney Snyder clarified, however, that Rankins did not specifically deny that the petitioner sold him drugs. Attorney Snyder said that she shared this information with the petitioner. Attorney Snyder recalled that although the identity of the confidential informant was known, the petitioner sent her a motion he had drafted requesting that the state disclose the name of the confidential informant. Attorney Snyder said she spoke to the prosecutor, who informed her that he would cease further plea negotiations if he was forced to reveal the name of the informant. She then sent the petitioner a letter which detailed the prosecutor's warning and asked the petitioner if he still wanted to file the motion. According to Attorney Snyder, the petitioner did not respond so she did not file the motion as it did not benefit the petitioner.

Attorney Snyder testified that she filed a motion to suppress the audio recording of the stop because the sound was not very clear. However, the prosecutor informed her that he had a clearer version of the recording, so she agreed to reserve the motion until trial. She also sought to suppress the superfluous statements in the recording. The state agreed to redact Tim Miller's statements at the beginning of the recording and his interview of the confidential informant at the end of the recording. According to Attorney Snyder, she filed motions to suppress the confidential informant's identification of the petitioner in the audio recording and the currency found on the petitioner at the time of his arrest. The parties agreed to argue these motions on the day of trial. Attorney Snyder stated that she was aware there were discrepancies as to the weight of the cocaine alleged to have been sold by the petitioner wherein Tim Miller's preliminary testimony differed from the laboratory report as to how much the drugs weighed. She explained to the petitioner that the discrepancy as to the weight of the drugs would serve the defense in attacking the witness's credibility, but had no relevance regarding the charges against him.

Attorney Snyder testified that about a month before trial the petitioner informed her of a possible alibi witness named Misty York. Attorney Snyder recalled that she attempted to locate York as well as other witnesses but was unsuccessful in her endeavors. Attorney Snyder explained that the petitioner's plea was entered in Moore County for reasons of convenience. She did not think the petitioner suffered any prejudice because he pled guilty in Moore County rather than in Bedford County.

Attorney Snyder recalled that she and Attorney Norton met with the petitioner about a plea deal. At the time, she informed the petitioner about the possibility of federal prosecution. At the petitioner's request, she provided case law establishing that both the state and federal government could prosecute for the same offense without violating double jeopardy. The petitioner told her and Attorney Norton that he wanted a letter stating he would not be prosecuted by the federal government if he pleaded guilty to the state charges. Attorney Snyder recalled that she sent the petitioner a copy

of the letter from Tim Lane. She subsequently met with the petitioner in jail, gave him another copy of the letter, and played the audio recording of the drug purchase. She recalled telling the petitioner that if he felt threatened, he should not plead guilty but rather go to trial.

Attorney Snyder testified that sometime in May of 2007, the petitioner announced that he no longer wanted her to represent him. At that time, she informed the trial court and the court responded that the petitioner should make a statement for the record. However, once on the record, the petitioner indicated that he did not want a new lawyer. Subsequently, the petitioner wrote Attorney Snyder a letter suggesting he wanted a new lawyer. She responded, informing the petitioner that he needed to have a motion filed soon if he wanted a new lawyer. The petitioner took no action in response to her letter. Attorney Snyder stated that after the petitioner entered his guilty plea, he thanked her for her work and asked if she would represent him in a divorce. Attorney Snyder said it was not until after the plea hearing that she learned the petitioner had filed complaints with the Board of Professional Responsibility.

John H. Norton, III, testified that he had been licensed to practice law in Tennessee since 1976 and that the majority of his practice was criminal defense. He had tried numerous criminal cases before a jury in both state and federal court. Although Attorney Snyder was appointed to represent the petitioner in this case, Attorney Norton agreed to assist her if the case went to trial. Attorney Norton said that Investigator Larry Shavers obtained the confidential informant's statement, which indicated that the informant could not identify the person who sold him drugs. However, the informant never claimed that the petitioner did not commit the offense.

Attorney Norton testified that Attorney Snyder consulted with him regarding the filing of various motions and defense strategy and he agreed with Attorney Snyder's decisions on these matters. Attorney Norton specifically noted that the petitioner's motions to suppress the stop and to dismiss the indictment had no merit, and the petitioner's motion to dismiss the arrest warrants was moot upon the issuance of the indictment.

Attorney Norton testified that he spoke to Tim Lane, the Director of the 17th Judicial District Drug Task Force, about the petitioner's case. Attorney Norton said that he had dealt with Lane before and he was aware that Lane had a good working relationship with the United States Attorney's Office. He believed that Lane would pursue the initiation of federal charges against the petitioner. Attorney Norton also noted that he talked with someone in the United States Attorney's Office and learned that Lane had approached that office with the petitioner's case. Attorney Norton recounted that once the possibility of federal charges arose, he took a more active role in the petitioner's case as he had more federal experience than Attorney Snyder. According to Attorney Norton, he had a conversation with the petitioner on June 18, 2007 and explained to him that Tim Lane had serious intentions of getting the federal government to pursue charges against the petitioner. Attorney Norton also explained that it was possible for the petitioner to be prosecuted in both state and federal court without violating constitutional protections against double jeopardy. Attorney Norton recalled that he advised the petitioner that it would be in his best interest to plead guilty in order to avoid a possible conviction as a Range II offender and federal prosecution.

However, Attorney Norton denied telling the petitioner that he would receive a life sentence in federal prison. Attorney Norton noted that "there [was] no way on God's green earth" the petitioner faced a federal life sentence for selling the amount of drugs he was accused of selling.

Attorney Norton recalled that the petitioner told him that he would plead guilty if he could get a letter providing assurance that he would not be prosecuted by the federal government. After receiving the letter from Tim Lane, the petitioner decided to plead guilty. Attorney Norton said that although Lane's letter did not bind the federal government, he believed the federal government would follow Lane's recommendation. Attorney Norton maintained that he never told the petitioner that the letter was binding. He also noted that the petitioner had yet to be charged by the federal government for the drug offense to which he pled guilty. Attorney Norton noted that he was prepared to go to trial if the petitioner had wanted a trial. He also stated that the petitioner indicated under oath that he had no objection to the fact that the plea submission hearing was held in Moore County.

Following the hearing, the post-conviction court entered an order denying the petitioner's request for post-conviction relief. The court made extensive findings of fact and determined that the petitioner did not meet his burden of proving that his attorneys' performance was deficient and that his attorneys' deficient performance prejudiced the outcome of the proceedings.

**ANALYSIS**

In order for a petitioner to succeed on a post-conviction claim, the petitioner must prove the allegations of fact set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). On appeal, this court is required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings, such as findings concerning the credibility of witnesses and the weight and value given their testimony, is de novo with a presumption that the findings are correct. *See id.* Our review of the post-conviction court's legal conclusions and application of law to facts is de novo without a presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001).

To establish the ineffective assistance of counsel, the petitioner bears the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense rendering the outcome unreliable or fundamentally unfair. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Arnold v. State*, 143 S.W.3d 784, 787 (Tenn. 2004). Deficient performance is shown if counsel's conduct fell below an objective standard of reasonableness under prevailing professional standards. *Strickland*, 466 U.S. at 688; *see also Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975) (establishing that representation should be within the range of competence demanded of attorneys in criminal cases). Prejudice is shown if, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A fair assessment of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances

of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689; *see also Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). Both deficient performance and prejudice must be established to prove ineffective assistance of counsel. *Strickland*, 466 U.S. at 697; *see also Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). If either element of ineffective assistance of counsel has not been established, a court need not address the other element. *Strickland*, 466 U.S. at 697.

The two-part standard of proving ineffective assistance of counsel also applies to claims arising out of the plea process. The prejudice requirement is modified so that the petitioner must show a reasonable probability that, but for the errors of counsel, the petitioner would not have pled guilty. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Adkins v. State*, 911 S.W.2d 334, 349 (Tenn. Crim. App. 1994). It is also helpful to note that when determining the knowing and voluntary nature of the guilty plea, the standard is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *see also State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). A petitioner's solemn declaration in open court that his or her plea is knowing and voluntary creates a formidable barrier in any subsequent collateral proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

On appeal, the petitioner claims that he received the ineffective assistance of counsel which caused him to enter an unknowing and involuntary guilty plea. As support for his claim, the petitioner first asserts that his attorneys were ineffective in failing to prepare the case for trial.

In the instant case, the post-conviction court found it abundantly clear from the petitioner's own testimony that his attorneys diligently pursued investigation of his case including filing appropriate motions and "did everything reasonably possible to communicate with the petitioner." The court further noted that the petitioner "failed to prove any deficiency of any sort on the part of trial counsel." We agree. Contrary to the petitioner's assertion, the petitioner's own testimony at the plea submission hearing clearly establishes that he had no complaints regarding his attorneys' representation. Additionally, the petitioner's own testimony at the post-conviction hearing reveals that his attorneys interviewed several witnesses, filed several motions, obtained and reviewed discovery materials from the state, obtained a statement from the confidential informant which was helpful to the defense, communicated with the petitioner about his case, and negotiated a favorable plea agreement. Accordingly, the evidence in the record does not preponderate against the post-conviction court's findings and the issue is without merit.

The petitioner next asserts that his attorneys failed to fully investigate and interview witnesses. The post-conviction court found that the petitioner "presented no evidence at the post-conviction hearing that any witnesses not interviewed would have provided relevant evidence." Again, contrary to the petitioner's assertion, the record establishes that his attorneys interviewed or attempted to locate all of the witnesses suggested by the petitioner. Additionally, the petitioner did not meet his burden to present the witnesses he claimed his attorneys failed to interview. As a general rule, the presentation of these witnesses at the post-conviction hearing is necessary to prove

that counsel's failure to utilize these witnesses resulted in prejudice to the petitioner. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Neither the post-conviction court nor this court may speculate on what a witness' testimony might have been if introduced by counsel. *Id*. Accordingly, the issue is without merit.

The petitioner finally asserts that his attorneys failed to inform him that the letter from Tim Lane, the Director of the 17th Judicial District Drug Task Force, was not binding on the federal government. In addressing this assertion, the post-conviction court found:

On Monday, June 18th, 2007, Mr. Norton and Ms. Sn[y]der met with the Petitioner at the Bedford County Jail and discussed the possibility of federal prosecution. The Petitioner apparently believed that double jeopardy prevented both federal and state convictions arising from the same criminal episode. Accordingly, the Petitioner requested case law on this issue and written assurance he would not be prosecuted federally, which counsel provided. The Petitioner contends that his plea was not knowing and voluntary because the threat of federal prosecution was coercive and that the letter from Director Lane (exhibit 7) does not provide absolute immunity from federal prosecution.

The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). . . . The Petitioner's hand-written petition as well as his answers at the plea acceptance hearing and his testimony at the post-conviction hearing prove that he can read and write and that he is of at least average intelligence. Before the Petitioner's guilty plea in this case, he had received a sixteen year sentence for sale of cocaine and two two-year sentences for criminal responsibility for sale of cocaine. Thus, he was already familiar with criminal proceedings. The Petitioner received excellent and thorough legal representation not only by appointed counsel, Ms. Sn[y]der, but also by her superior, Mr. Norton, and their office investigator, Larry Shavers. The Petitioner had ample opportunity to and did, in fact, confer at length with counsel about the options available to him. The transcript of the plea acceptance hearing (exhibit 9), the petition to enter a guilty plea (exhibit 8), and the State's excellent cross-examination of the Petitioner at the post-conviction hearing lead the court to conclude that his guilty plea did not result from ignorance, misunderstanding, coercion, inducement, or threat. The Petitioner received dismissal of three counts, a mid-range I sentence and ample assurance he would not be federally prosecuted. He admitted he was freely pleading guilty and most desirous of this settlement when he testified that he was concerned the trial court would not accept the plea but he knew what he needed to say.

In the instant case, the record supports the post-conviction court's findings. Attorney Norton testified that he never told the petitioner that the letter from Tim Lane was binding on the federal government. Additionally, the letter itself does not indicate a guarantee of immunity from federal

prosecution. Rather, the letter merely indicates that Tim Lane was informed that the petitioner was going to plead guilty, and therefore, Lane's "office will not ask the U.S. Attorney's Office to pursue any type of federal prosecutorial actions against Mr. Mason." Moreover, the transcript of the plea submission hearing clearly reveals that the petitioner was satisfied with his attorneys' representation and the petitioner's guilty plea was knowing and voluntary. Other than his own assertion, the petitioner has failed to demonstrate that his attorneys performed deficiently regarding the letter or that he would not have pled guilty but for the alleged deficiency. Therefore, he is not entitled to relief.

## CONCLUSION

Based upon the foregoing review, we affirm the judgment of the post-conviction court.

_____
J.C. McLIN, JUDGE